JAMES NEGRO, Respondent, *v.* BOSTON AND MAINE RAILROAD, Appellant.

Third Department, June 3, 1944.

*Whalen, McNamee, Creble & Nichols,* attorneys (*Charles E. Nichols* of counsel), for appellant.

*John J. O'Malley,* attorney for respondent.

HILL, P. J. Plaintiff has recovered a verdict for personal injuries. The defendant appeals. The action was brought under the Federal Employers' Liability Act by the respondent who, at the time of his injury, was working for the appellant in interstate commerce as a freight handler or trucker on the freight transfer dock at Mechanicville, N. Y. According to respondent's version, which we must accept, he was pushing his empty truck northerly when another employee pushed a loaded truck from a car door alongside the dock, making it necessary that he stop quickly. In doing so, he slipped on the steel runway upon which he was walking, fell to the platform with the truck on top of him, breaking his leg. There was no collision between the trucks.

The dock consists of two platforms, each about 800 feet long and 15½ feet wide, with separate roofs supported by a line of about fifty posts in the center, leaving two unobstructed passageways on each platform a little over 7 feet wide. There was a track between the platforms with space for freight cars; also several tracks on the outer side of and parallel with the

platforms. Steel runways 10 inches wide and 11 inches apart extend the full length of each platform 15½ inches from the outer edge. Freight cars stand on each side of the platform with doors open to permit transfer and regrouping of shipments. Small bridges of metal or wood are placed to permit hand-propelled trucks to pass from cars to the platform, and from one car to another. The transfer of the freight permits all going to one consignee or to one station to be placed in a single car. Freight that was to be transferred from the outer line of cars was trucked to and through a car adjacent to the platform. Respondent describes his injury — "I was walking right along and all of a sudden I see another truck come from the other car with a big crate on, going fast, and I was about five or six feet away from him and I try to stop all of a sudden not to run into the other man. I pull the truck towards me and first thing you know both legs go and I skid underneath the truck and fall on my back. I try to stop all of a sudden to avoid, not to kill one another * * *. Q. He came right out into your path? A. Yes, across my path. Q. You tried to stop? A. And I skidded with both legs and I find myself head down. * * * I slipped with both feet at one time. * * * On those steel plates on both together, and I hit my head on the platform and then they picked me up."

Originally the platforms were paved with macadam which in hot weather would soften permitting truck wheels to sink. This was replaced in 1929 with planks on which the steel runway was laid, desirably smooth to facilitate the handling of trucks of a wheelbarrow type, with two small wheels in front, and handles for an operator in the rear. These weighed about 125 pounds and were from 20 to 24 inches wide. Respondent stopped quickly when he saw a loaded truck coming from a car door near at hand. He says he was walking upon both of the smooth steel places; considering their distance apart, this seems difficult. There was a space between them 11 inches wide where he could have walked on the planking. He had been engaged in this work for some time and knew that the steel runways were slippery and that trucks loaded and otherwise were pushed or pulled from car doors only 15 inches from the runway. With his empty truck he could have used any portion of the platform. The Trial Justice, over an objection, permitted the jury to determine whether negligence could be predicated upon the condition of the steel runways. There is proof of a rule that truckers should pull rather than push the loaded trucks. Respondent stopped when he saw the loaded truck

which was being pushed from the car door. Had the operator been ahead pulling the truck, there would have been the same invitation to stop. Ordinarily a loaded truck was given the right of way, empties more maneuverable turning off the runway. The danger of injury resulting from a collision between hand-propelled vehicles is negligible as compared with motor-driven vehicles. Respondent knew of the slippery condition of the runway, and if he chose to walk upon it, the danger was obvious. He also knew that trucks would come suddenly from the car doors. If there was a rule that trucks should be pulled rather than pushed, respondent's hazard was not increased by its violation. His was the light truck, the other the heavy one, and if the man pulling it appeared suddenly on the runway, there would have been the same necessity to stop as though the truck first emerged from the door.

Under the Federal Employers' Liability Act, the common-law rule of assumption of risk applies under conditions which obtain in this case. (*Brady* v. *Terminal R. R. Assn.*, 303 U. S. 10.) No violation of a statute is asserted. The respondent assumed the ordinary risks of his employment, and even the extraordinary risks if they were obvious, fully known and appreciated by him. (*Boldt* v. *Pennsylvania R. R. Co.*, 245 U. S. 441.) Judgments have been reversed when risks were assumed — for death caused by falling from slippery and defective stairs which decedent had used frequently (*N. W. Pacific R. Co.* v. *Bobo*, 290 U. S. 499); for injury to an eye received while cutting a steel rail with defective sledge hammer and chisel, no protective goggles being furnished (*Chesapeake & Ohio Ry. Co.* v. *Kuhn*, 284 U. S. 44); for an injury received through falling into a hole or ditch which the injured employee had seen adjacent to the railroad tracks (*Delaware, etc., R. R.* v. *Koske*, 279 U. S. 7); for an injury received from falling upon marble stairs which witnesses said were "slippery as ice", "smooth as glass" and "highly polished", the Court of Appeals saying: "It is not pretended that there was any foreign substance upon the steps to make them more slippery. If they were slippery by reason of their smoothness or polish, that fact was as apparent to her as it was to her employers; she knew that the steps were not covered with rubber treads, carpets or other material, and we think the risk incidental to their use was assumed by her." (*Kline* v. *Abraham*, 178 N. Y. 377, 381.)

Respondent walked upon this slippery runway by his own choice. Out of a total width of 14 feet the steel runways occu-

pied less than 2. The employer could not foresee danger that two men walking would collide. The same substantially would apply when two men were walking and pushing or pulling hand-operated wheelbarrow trucks. The risk was incident to the employment and was assumed by respondent, as the surroundings were obvious and visible.

The judgment and order should be reversed on the law and the complaint dismissed.

BREWSTER, J. (dissenting). I dissent as to the result Presiding Justice HILL has arrived at in his opinion upon the ground that the evidence sufficiently sustains a finding that plaintiff's injury was caused by the negligence of a fellow servant while in the scope of his employment by the defendant.

The jury were empowered to accept, and the evidence is such that they were justified in accepting the version of the happening of the accident as recited by plaintiff. Indeed, there seems little if any dispute about that. In its brief appellant states: "We are assuming on this appeal, however, that the accident happened exactly as plaintiff testified. Upon such assumption it is our contention that the complaint should have been dismissed, because of the complete absence of any proof that defendant was negligent."

Plaintiff, then, was pushing his empty freight transfer truck over a long platform alongside and adjacent to a long line of freight cars when suddenly and without notice or warning a fellow freight handler pushed a truck carrying a large crate out of one of the car doors and directly into his pathway and immediately in front of plaintiff's truck. In his avoidance of imminent collision, plaintiff slipped and fell and sustained severe injury. In my opinion the jury were amply warranted in finding the aforesaid act of plaintiff's fellow servant a negligent act which was a proximate cause of plaintiff's injury. I do not consider the verdict excessive. I favor an affirmance of the judgment and order appealed from.

BLISS and SCHENCK, JJ., concur with HILL, P. J.; BREWSTER, J., dissents in a memorandum in which HEFFERNAN, J., concurs.

Judgment and order reversed on the law, with costs, and complaint dismissed.