MORRIS ROSENSTON *vs.* BICKFORD SHOES, INC.

Suffolk.  April 7, 1960. — April 29, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence*, Invited person. *Evidence*, Admissions and confessions, Contradiction of witness, Admitted without limitation. *Agency*, Admissions by agent, Scope of authority or employment. *Practice, Civil*, Auditor: striking matter from report; Exceptions: general exception.

Evidence as to the appearance of factory premises having a parking area, a paved walk running therefrom along a street, and between the walk and the factory building an unfenced, unpaved area warranted a finding that a customer injured by falling on snow covered ice while walking across the unpaved area on a direct line between the parking area and the entrance of the building was impliedly invited so to use the unpaved area.  [771–772]

In an action against the proprietor of a factory by a customer for injuries sustained by falling on snow covered ice on the defendant's premises, no error appeared in refusing to strike from an auditor's report certain conclusions as to the plaintiff's being justified in thinking that he was invited to walk over the portion of the premises where he was injured and as to steps which the defendant should have taken to make that portion safe or to warn of the danger. [771–772]

In an action against a corporation which was the proprietor of a factory for personal injuries sustained by a customer on the factory premises by falling on snow covered ice, there was no merit in an exception by the defendant to the admission, over its general objection, of testimony by the plaintiff, given in rebuttal and inconsistent with previous testimony of the defendant's president, that after the accident the president said to the plaintiff that he, the president, had told a maintenance employee "several days ago to clean . . . [the ice] up" and that "he gave the . . . [employee] plenty of hell." [772–773]

TORT against the proprietor of a shoe factory. Writ in the Superior Court dated March 26, 1956.

There was a verdict for the plaintiff at the trial before *Tomasello*, J. The defendant alleged exceptions.

*Joseph J. Walsh*, for the defendant.

*Robert J. Sherer*, (*Robert T. Abrams* with him,) for the plaintiff.

CUTTER, J. The plaintiff, a business visitor of the defendant, was proceeding from the defendant's parking space to the entrance of its building. He was injured by falling on ice concealed by a light fall of snow. Between the building and the paved walk parallel and adjacent to, and about at the level of, the street, was an unpaved area, about eighty-five feet long and fifteen feet wide, where photographs show that some grass grew in summer. This area was not fenced or clearly marked off from either the walk or the parking area. It "was open and appeared to be open for the use of the customers." The walk was in disrepair. The plaintiff fell at a point on the unpaved area on the direct line between the parking area and the building entrance. There were footprints on the snow ahead of him. The ice had been in the area "for a long period of time." There "were no barriers or signs to inform customers to take a different route." Although no automobiles were on the unpaved area at the time, two photographs show automobile tracks

leading onto the area, and several photographs suggest that one not using the area frequently might believe that it was available for parking. It was blocked off, however, from the street by automobiles parked in the street near the walk on the day of the accident. The plaintiff had been at the plant several times before. The walk was not visible because it had recent snow on it. It "did not come to . . . [the plaintiff's] mind . . . that there was a walk there."

The circumstances are stated in their aspect most favorable to the plaintiff, as they appeared at the trial of this action of tort. The judge refused to strike out portions of an auditor's report finding in effect (a) that the defendant should have taken steps to remove or sand the ice, to keep the unpaved area safe, and to warn of the danger, and (b) that because of the open condition of the premises on the most direct route to the entrance, the plaintiff "could with reason infer that he had an implied invitation to take this route." He also denied the defendant's motion for a directed verdict.

1. Photographs in evidence and the testimony describing the unpaved area show that the jury would have been warranted in concluding that the unpaved area was a reasonable route for the plaintiff to use. The walk, even without snow, was not so clearly differentiated from the unpaved area as to make unreasonable the impression that it could be used as the plaintiff did. The auditor's conclusions were warranted by his subsidiary findings. They were not based upon the application of incorrect principles of law. We think that they did not amount only to rulings of law of a character necessitating that they be struck from the report. Cf. *Moore* v. *Worcester Insulation Co. Inc.* 338 Mass. 44, 47; *Badoloto* v. *New York, N. H. & H. R.R.* 338 Mass. 421, 428; *Cairns* v. *Giumentaro,* 339 Mass. 675, 678. The physical condition and location of the narrow unpaved area and the slight differentiation of it from the walk distinguish this case from decisions like *Walker* v. *Winstanley,* 155 Mass. 301, 303, *Dickie* v. *Davis,* 217 Mass. 25, 29–30, *Cohen* v. *Davies,* 305 Mass. 152, 155–157 (clearly defined walks available),

and *Greenfield* v. *Freedman*, 328 Mass. 272, 274–275. In the cases last cited, it was held that no implied invitation was extended to use an open grassed area where clearly defined walks were available. The judge's charge covered the applicable principle fairly. There was no error in the denial of either the defendant's motion to strike portions of the auditor's report or its motion for a directed verdict.

2. The defendant's president was asked whether he had told the plaintiff (apparently not at the scene of the accident) that he had instructed a maintenance man to "take care" of the ice and had so testified before the auditor. There was no prejudicial error in receiving his denials. Later the defendant's president, subject to exception, stated that he "might have told" the man charged with keeping "the premises clear of ice" that "somebody had fallen" and that soon after the accident he had observed the area. Admitting these answers was not prejudicial.

In rebuttal, the plaintiff, subject to exception, was permitted to testify (a) that a short time after he fell, the defendant's president said that he had "told my man several days ago to clean it [the ice] up" and (b) that subsequently, when the president visited the plaintiff in the hospital, he said "that he gave the janitor plenty of hell." These rather inconclusive remarks, viewed as admissions, are slightly more significant than statements of the type not admitted in *Rasimas* v. *Swan*, 320 Mass. 60, 62. If these statements were made, and even if they rise to the level of admissions, the defendant's president was talking to the plaintiff, a customer of the defendant, within what could be found to be the scope of his duties. Doubtless, the president wished to preserve the customer's good will. The defendant contends that it "was not shown that the president was authorized to make admissions . . . after the accident had happened." Our cases have limited inquiry about alleged admissions by subordinate employees of a defendant to those made immediately upon the occurrence of an accident. See *Parsons* v. *Dwightstate Co.* 301 Mass. 324, 327; *Foley* v. *Hotel Touraine Co.* 326 Mass. 742, 745; *Barrett* v.

*Wood Realty Inc.* 334 Mass. 370, 374; Restatement 2d: Agency, § 288; Wigmore, Evidence (3d ed.) § 1078; McCormick, Evidence, § 244, at pp. 518–519. See also *Rocco* v. *Boston-Leader, Inc., ante,* 195, 196–197. The rule of these cases has been applied to managerial employees, but, certainly, the president of a corporation, if its chief executive officer, is likely to have a broader range of authority to make statements than other employees. See *Garfield & Proctor Coal Co.* v. *Pennsylvania Coal & Coke Co.* 199 Mass. 22, 42. See also *McGenness* v. *Adriatic Mills,* 116 Mass. 177, 180–181 (superintendent); *Bigelow Carpet Co.* v. *Wiggin,* 209 Mass. 542, 549–550 (superintendent); *Wood* v. *Canadian Imperial Dry Inc.* 296 Mass. 80, 83 (treasurer and general manager). The defendant's objections to this evidence, in any event, were general, and the trial judge reasonably could have felt that the answers were at least prior statements, on an issue not plainly collateral, inconsistent with the president's testimony. The defendant made no request that the testimony be admitted only for a limited purpose. See *Salonen* v. *Paananen,* 320 Mass. 568, 575. See also *Irving* v. *Goodimate Co.* 320 Mass. 454, 460; *Commonwealth* v. *David,* 335 Mass. 686, 692.

The defendant's other exceptions to the admission and exclusion of evidence are without merit.

*Exceptions overruled.*